| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JULIE MORA ANDRISANI, | | No. 2:24-cv-02766-DAD-JDP |
| Plaintiff, | | |
| v. | | ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND REMANDING THIS ACTION TO THE SACRAMENTO COUNTY SUPERIOR COURT |
| MAXIMUS HUMAN SERVICES, INC., et al., | | |
| Defendants. | | (Doc. No. 17) |

This matter is before the court on plaintiff's motion to remand this action to the Sacramento County Superior Court, filed on November 27, 2024. (Doc. No. 17.) The pending motion was taken under submission on the papers on January 21, 2025. (Doc. No. 23.) For the reasons explained below, plaintiff's motion to remand will be granted.

**BACKGROUND**

On August 20, 2024, plaintiff Julie Mora Andrisani, on behalf of herself and all others similarly situated, filed a complaint initiating this action in the Sacramento County Superior Court against defendants Maximus Human Services, Inc., Maximus, Inc., The Panther Group, Inc., and unnamed Doe defendants 1–50. (Doc. No. 1-2 at 5.) In her complaint, plaintiff alleges as follows.

/////

1

Defendants' "unlawful conduct includes but is not limited to Defendants' uniform and unlawful pay policies and practices of failing to accurately record all the time that non-exempt employees were under the supervision and control of Defendants[,]" depriving plaintiff and the putative class of overtime pay. (*Id.* at ¶ 79.) Putative class members "periodically worked hours that entitled them to overtime compensation under the law but were not fully compensated for those hours." (*Id.* at ¶ 33.)

Furthermore, putative class members "were not paid all wages for all hours worked due to Defendants' uniform payroll policies and practices that unfairly rounded employees' wages to the detriment of the Class Members." (*Id.* at ¶ 25.) "This rounding policy routinely failed to capture the entirety of the hours the Class Members worked[,]" and "Class Members suffered periodic shortages in the hours for which they were compensated." (*Id.*) Putative class members were also "periodically" and in a "uniform" manner denied meal and rest breaks. (*Id.* at ¶¶ 33, 38, 65.)

Based on these and other allegations, plaintiff asserts the following causes of action: (1) Failure to pay all minimum wages, California Labor Code §§ 1194, 1197–98, California Code of Regulations, Title 8, § 11040; (2) failure to pay all overtime wages, California Labor Code §§ 510, 1194, 1199, California Code of Regulations, Title 8, § 11040; (3) failure to provide rest periods and pay missed rest period premiums, California Labor Code § 226.7, California Code of Regulations, Title 8, § 11040; (4) failure to provide meal periods and pay missed meal period premiums, California Labor Code §§ 226.7, 512, California Code of Regulations, Title 8, § 11040; (5) failure to maintain accurate employment records, California Labor Code §§ 226, 1174; (6) failure to pay wages timely during employment, California Labor Code §§ 204, 210; (7) failure to pay all wages earned and unpaid at separation, California Labor Code §§ 203; (8) failure to furnish accurate itemized wage statements, California Labor Code § 226, and (9) violations of California's Unfair Competition Law, Business and Professions Code §§ 17200–17210. (*Id.* at ¶¶ 22–111.)

On October 7, 2024, defendant The Panther Group, Inc. removed the action to this federal court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 on the grounds that this court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA") because there is minimal

2

1  diversity, the putative class exceeds 100 members, and the amount in controversy exceeds $5
2  million. (Doc. No. 1 at 3–15.) On November 6, 2024, the parties filed a stipulation to extend the
3  time for plaintiff to file a motion to remand, which the court granted the following day. (Doc.
4  Nos. 10, 11.) On November 15, 2024, the parties filed a second stipulation for extension of the
5  deadline for filing a motion to remand, which the court granted on November 18, 2024. (Doc.
6  Nos. 14, 15.) On November 26, 2024, plaintiff filed the pending motion to remand this action to
7  the Sacramento County Superior Court, arguing that defendant The Panther Group, Inc. has not
8  met its burden to establish the amount in controversy exceeds $5 million, as required for federal
9  jurisdiction pursuant to CAFA. (Doc. No. 17 at 5.) On December 11, 2024, defendant The
10 Panther Group, Inc. filed an opposition to the motion, on December 19, 2024, defendants
11 Maximus Human Services, Inc. and Maximus, Inc. filed a notice of joinder in defendant The
12 Panther Group, Inc.'s opposition, and on December 20, 2024, plaintiff filed her reply to
13 defendants' opposition. (Doc. Nos. 18, 19, 20.)

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and have subject matter jurisdiction only where authorized by the Constitution and Congress. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Unless otherwise limited, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Through CAFA, Congress broadened federal diversity jurisdiction over class actions . . . ." *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013).

Under CAFA, federal courts have jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court." *Ibarra v. Manheim Invs. Inc.*, 775 F.3d 1193,

3

1197 (9th Cir. 2015). "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89. However, "[t]he rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 28 U.S.C. § 1453(c)(1)).

## ANALYSIS

Defendant The Panther Group Inc. removed this putative class action pursuant to CAFA, claiming that the amount in controversy is $7,489,384.31.[1] (Doc. No. 1 at 3, 15.) In her motion to remand, plaintiff argues that CAFA is not satisfied because defendants have failed to meet their burden of establishing that the amount in controversy here exceeds $5 million.[2] (Doc. No. 17 at 5.) In their opposition, defendants argue that the requirements of CAFA are satisfied because the amount in controversy is greater than $5 million. (Doc. No. 18 at 7.)

**A.    Overtime**

In their notice of removal, defendants calculate the amount in controversy as to plaintiff's overtime claim based on an assumed overtime violation rate of five hours per putative class

---

[1] In their opposition to the pending motion, defendants argue that the amount in controversy is at most $6,292,498.68. (Doc. No. 18 at 17, n. 2.) Thus, defendants appear to concede that their calculations in this regard at the time of removal were inaccurate to some extent. Moreover, in arriving at the $6,292,498.68 figure, defendants calculate the amount in controversy by adding the amounts in controversy for individual claims as follows: overtime ($1,107,475.00), minimum wage and liquidated damages ($1,007,500.00), meal violations ($738,187.50), rest violations ($738,187.50), waiting time ($909,033.60), and wage statements ($340,00.00). (Doc. No. 18 at 17.) Defendants then add 30% of that subtotal to account for attorneys' fees (effectively multiplying the subtotal by 1.3). (*Id.*) In these calculations, defendants appear to have combined two claims, for failure to pay wages timely during employment and failure to pay all wages earned and unpaid at separation, and to have combined with other claims or not accounted at all for plaintiff's two remaining claims for failure to maintain accurate employment records and violation of the UCL. (*Id.*) Because it is defendants' burden, and the court cannot "supply further assumptions of its own[,]" the court does not evaluate or correct defendants' consolidations or omissions of plaintiff's claims. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020); *cf. Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022) ("Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden.").

[2] Plaintiff does not dispute that the other requirements of CAFA are satisfied here.

4

1 member per workweek. (Doc. No. 1 at 11.) In her motion to remand, plaintiff argues that the
2 assumed violation rate employed by defendants as to her overtime claim is unfounded. (Doc. No.
3 17 at 10.) In their opposition, defendants reason that this violation rate is justified by the
4 inclusion of the word "uniform" in the allegations of plaintiff's complaint. (Doc. No. 18 at 18–
5 19.)

6       "[A] removing defendant is permitted to rely on a chain of reasoning that includes
7 assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (citation
8 omitted). "Such assumptions cannot be pulled from thin air but need some reasonable ground
9 underlying them." *Id.* (citation omitted). "An assumption may be reasonable if it is founded on
10 the allegations of the complaint." *Id.* (citation omitted).

11       "Whether the alleged violations occur from time to time, as a matter of pattern and
12 practice, or uniformly, as alleged in the complaint, has a significant impact on the amount in
13 controversy calculation." *Cocroft v. EquipmentShare.com Inc.*, No. 24-cv-00645-BAS-AHG,
14 2024 WL 3877274, at *7 (S.D. Cal. Aug. 19, 2024). Here, plaintiff alleges for purposes of her
15 overtime claim that defendants' "unlawful conduct includes but is not limited to Defendants'
16 *uniform* and unlawful pay policies and practices of failing to accurately record all the time that
17 non-exempt employees were under the supervision and control of Defendants." (Doc. No. 1-2 at
18 ¶ 79) (emphasis added). Plaintiff also alleges that putative class members "periodically worked
19 hours that entitled them to overtime compensation under the law but were not fully compensated
20 for those hours." (*Id.* at ¶ 33.)

21       Still, plaintiff's use of the term "uniform" in her allegations does not justify defendants'
22 assumed violation rate of five hours per week.[3] *See Martinez v. Auto Truck Grp., LLC*, No. 2:24-
23 cv-00657-DAD-JDP, 2024 WL 3565996, at *3–4 (E.D. Cal. July 29, 2024) (finding that the
24 defendant's assumed overtime violation rate of 2.5 to 10 hours per week was not substantiated by
25 the plaintiff's allegations that the "defendant uniformly failed to properly calculate and pay
26 overtime wages at the proper legal rate"); *Graham v. IFCO Sys. N.A., Inc.*, No. 17-cv-00074-SJO-

---

[3] The court assumes without deciding that all other aspects of the calculation offered by defendant are accurate and supported.

5

SP, 2017 WL 1243498, at *5 (C.D. Cal. Mar. 3, 2017) (lowering the defendant's proposed overtime violation rate from five hours per week to one hour per week where the plaintiff had alleged a uniform policy and systematic scheme). Instead, the court finds that "one hour of unpaid overtime per putative class member per week is a reasonable assumption for purposes of calculating the amount in controversy." *Graham*, 2017 WL 1243498, at *5; *see also Jasso v. Money Mart Exp., Inc.*, No. 11-cv-05500-YGR, 2012 WL 699465 at * 6 (N.D. Cal. Mar. 1, 2012) ("Where, as here, the allegations are that class members were not compensated for overtime . . . 'at all material times' based on a 'uniform policy and systematic scheme' to deprive them of these rights, it is reasonable to assume one violation per week here. It would not be reasonable to double, triple or quadruple those numbers without any evidence to support the calculations . . ., nor would it be reasonable to assume consistent, weekly violations where only sporadic violations were alleged . . . ."); *cf. Rapisura v. BMW of N. Am., LLC*, No. 2:22-cv-00455-WBS-AC, 2022 WL 1557001, at *3 (E.D. Cal. May 17, 2022) (finding that the defendant's assumption of one hour of overtime per week was reasonable in light of the plaintiff's allegation that class members "periodically worked hours that entitled them to overtime compensation" due to "uniform and unlawful pay policies and practices"); *Long v. Destination Maternity Corp.*, No. 15-cv-02836-WQH-RBB, 2016 WL 1604968 at * 7 (S.D. Cal. April 21, 2016) (finding that an assumption of "one hour of unpaid overtime per putative class member per week" is a reasonable estimate "based on the allegations that Defendant engaged in a uniform policy of failing to pay overtime wages"). Therefore, applying one hour of unpaid overtime per putative class member per week, the amount in controversy for plaintiff's overtime claim is no more than $221,495.[4] *See Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) ("In a circumstance like this, merely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative assumption.").

---

[4] Defendants calculated the amount in controversy for the overtime claim as being $1,107,475 assuming five violations per workweek. (Doc. No. 18 at 17.) To modify this number to assume one violation per workweek, the court divides by five.

**B.   Minimum Wage**

In their notice of removal, defendants calculate the amount in controversy in connection with plaintiff's minimum wage claim based on an assumed minimum wage violation rate of five hours per putative class member per workweek. (Doc. No. 1 at 9–10.) In her motion to remand, plaintiff argues that defendants' assumed violation rate as to her minimum wage claim is unfounded. (Doc. No. 17 at 9.) In their opposition, defendants reason that this violation rate is justified by evidence that full-time employees work an average of five shifts a week and eight hours per shift, and by the inclusion of the word "uniform" in plaintiff's allegations. (Doc. No. 18 at 18–19.)

That employees work five shifts a week and eight hours per shift does not provide any insight regarding the amount of unpaid overtime the putative class members worked. As for the inclusion of the word "uniform" in plaintiff's allegations, plaintiff does allege in her complaint that putative class members "were not paid all wages for all hours worked due to Defendants' uniform payroll policies and practices that unfairly rounded employees' wages to the detriment of the Class Members." (Doc. No. 1-2 at ¶ 25.) Plaintiff also alleges that "[t]his rounding policy routinely failed to capture the entirety of the hours the Class Members worked[,]" and that "Class Members suffered periodic shortages in the hours for which they were compensated." (*Id.*)

Plaintiff's inclusion of the word "uniform" in her allegations does not provide adequate justification for defendants' application of an assumed violation rate of five unpaid hours of work per workweek.[5] *See Graham*, 2017 WL 1243498, at *8 ("Although Plaintiff alleges a uniform policy which was in effect at 'all material times,' the Court finds that Defendant's assumption of five hours of work at a rate below minimum wage is unreasonable."). Again, the court is persuaded that one hour per workweek is a more reasonable assumption. *See id.* ("Accordingly, the Court calculates the amount in controversy for failure to pay minimum wage as if Plaintiffs worked one hour per week without any compensation, noting that this nears the upper limit of this claim and that Plaintiffs could be due a lesser amount if paid for the work at a rate below

---

[5] The court assumes without deciding that all other aspects of defendants' calculation as to this claim are accurate and supported.

7

1    minimum wage."); *cf. Rapisura*, 2022 WL 1557001, at *2 (finding that the "defendant reasonably
2    assumed one hour of unpaid work per week because" the "plaintiff alleges the violations
3    happened 'routinely,' there were 'periodic shortages in the hours' putative class members were
4    compensated, and the unpaid minimum wages were due to 'uniform payroll policies and
5    practices.'"); *Jauregui*, 28 F.4th at 993 n.5, 994 (finding that the defendant's assumption that one
6    hour of work a week went unpaid was reasonable). Therefore, the court concludes that at this
7    stage defendant has established an amount in controversy as to plaintiff's minimum wage claim
8    of no more than $221,500.[6]

9    Assuming without deciding that the remaining calculations for the amounts in controversy
10   asserted by defendants are accurate, the total amount in controversy would still not meet or
11   exceed $5 million.[7] Indeed, even if the court were to assume two hours of unpaid overtime and
12   two hours of unpaid minimum wage per week, the amount in controversy would still not meet or
13   exceed $5 million.[8] *See Andrade v. Beacon Sales Acquisition, Inc.*, No. 19-cv-06963-CJC-RAO,
14   2019 WL 4855997, at *3 (C.D. Cal. Oct. 1, 2019) ("Based on these allegations, Defendants
15   assume a violation rate of one hour of off-the-clock work and two hours of uncompensated

---

[6] Defendants calculated the amount in controversy for plaintiff's overtime claim as $1,107,500 assuming five violations per workweek. (Doc. No. 18 at 9–10.) To modify this number to assume one violation per workweek, the court divides by five.

[7] The court reaches this conclusion by adding the following amounts in controversy: Overtime (($1,107,475.00) x 1/5), minimum wage and liquidated damages (($1,007,500.00) x 1/5), meal violations ($738,187.50), rest violations ($738,187.50), waiting time ($909.033.60), and wage statements ($340,00.00). (Doc. No. 18 at 17.) The court then adopts defendants' proposed percentage and adds 30% of that subtotal to account for attorneys' fees (multiplying the subtotal by 1.3). (*Id.*) Pursuant to this calculation, which modifies defendants' calculations to provide for overtime and minimum wage violation rates of one hour per workweek, the amount in controversy is no more than $4,118,920.

[8] The court reaches this conclusion by adding the following amounts in controversy: Overtime (($1,107,475.00) x 2/5), minimum wage and liquidated damages (($1,007,500.00) x 2/5), meal violations ($738,187.50), rest violations ($738,187.50), waiting time ($909.033.60), and wage statements ($340,00.00). (Doc. No. 18 at 17.) Again, the court adopts defendants' proposed percentage and then adds 30% of that subtotal to account for attorneys' fees (multiplying the subtotal by 1.3). (*Id.*) Pursuant to this calculation, which incorporates overtime and minimum wage violation rates of two hours per workweek, the amount in controversy is no more than $4,695,000. (Doc. No. 18 at 17.)

overtime per workweek."). Therefore, CAFA does not provide subject matter jurisdiction over this action, remand is warranted, and the court need not address the amount in controversy as to plaintiff's remaining claims or for attorneys' fees.[9]

**CONCLUSION**

For the reasons set forth above:

1. Plaintiff's motion to remand (Doc. No. 17) is GRANTED;

2. This action is REMANDED to the Sacramento County Superior Court, pursuant to 28 U.S.C. § 1447(c), for lack of subject matter jurisdiction; and

3. The Clerk of the Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:  **April 30, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[9] Nevertheless, the court notes that the appropriate violation rate for the meal and rest break claims would be no more than 75%, rather than the 100% rate defendants assume, due to plaintiff's use of the modifiers "periodically" and "uniform" in the allegations of her complaint (Doc. No. 1-2 at ¶¶ 33, 38, 65); *see Cocroft*, 2024 WL 3877274, at *8 ("While the Complaint's limiting language of 'from time to time' casts doubt upon Defendant's reasonable use of a 100% violation rate, the simultaneous and conflicting use of 'uniform policy and practice' provides a plausible basis for Defendant to select a 75% violation rate, which is outside of the established range typically used for events that may be assumed to occur less often."). Given this 75% violation rate for meal and rest break claims, even three hours of unpaid overtime and three hours of unpaid minimum wage per week would still not be enough to meet the $5 million amount in controversy threshold. The court reaches this conclusion by adding the following amounts in controversy: Overtime (($1,107,475.00) x 3/5), minimum wage and liquidated damages (($1,007,500.00) x 3/5), meal violations (($738,187.50) x 0.75), rest violations (($738,187.50) x 0.75), waiting time ($909.033.60), and wage statements ($340,00.00). (Doc. No. 18 at 17.) The court then adds 30% of that subtotal to account for attorneys' fees (multiplying the subtotal by 1.3). (*Id.*) Pursuant to this calculation, the amount in controversy is no more than $4,791,000. (Doc. No. 18 at 17.)

9